**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

AMANDA MONTGOMERY,

        Plaintiff,

v.                                                                   Action No. 2:14cv231

PROGRESSIVE ADVANCED
INSURANCE COMPANY,

        Defendant.

## OPINION & ORDER

This declaratory judgment action is before the Court on cross motions for summary judgment, as well as Plaintiff's motion to amend responses to requests for admissions. Plaintiff is seeking a declaration that the 2007 Yamaha Rhino, in which she was a passenger during an off-road accident in Arizona, is an "uninsured or underinsured motor vehicle" as defined in the policy of motor vehicle liability insurance Defendant issued to Plaintiff in Virginia. On January 28, 2015, the Court held a hearing on the motions. W. Lawrence Perkins, III, Esq., represented Plaintiff, and T. Jeffrey Salb, Esq., represented Defendant. Jody Stewart was the Official Court Reporter. For the reasons stated on the record, the Court GRANTS Plaintiff's motion to amend responses to requests for admissions (ECF No. 20), GRANTS Plaintiff's motion for summary judgment (ECF No. 13), DENIES Defendant's motion for summary judgment (ECF No. 10), and FINDS that the 2007 Yamaha Rhino is an "uninsured or underinsured motor vehicle" as defined in the insurance policy.

## I. UNDISPUTED FACTS

This action relates to injuries Plaintiff sustained in Arizona while riding off-road in a 2007 Yamaha Rhino ("the Rhino") operated by her brother, Joseph Montgomery. The relevant facts are not in dispute. Plaintiff is seeking coverage for her injuries under the uninsured/underinsured endorsements in the motor vehicle liability insurance policy issued to her by Defendant in Virginia ("the Policy"), which has uninsured/underinsured coverage limits of $100,000. Policy, Ex. 1 to Def.'s Mem. in Support of Sum. Judg. ("Def.'s Mem."), ECF No. 11-2. The Policy defines "uninsured motor vehicle" and "underinsured motor vehicle" as "a land motor vehicle or trailer of any type" that does not meet certain coverage limits, but provides, "neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes: [] [a] farm type tractor or other equipment designed for use principally off public roads while not on public roads." Policy 12-13, ECF No. 11-2.

On February 12, 2012, Plaintiff was riding in the front passenger seat of the Rhino operated by her brother, Joseph Montgomery, in Globe, Arizona. Compl. ¶¶ 9-10. The Rhino is a four-wheel vehicle with two bucket seats in the front, a bench seat in the back, an open top, open sides, and roll bars. *See* Ex. 3-6 to Def.'s Mem., Photos of the Rhino, ECF Nos. 11-4, 11-5. Joseph Montgomery was driving the Rhino off-road at Round Mountain Park where there was no improved, paved, or maintained road. Dep. of Joseph Montgomery ("Dep.") 23:2-4, ECF No. 11-7, 12-10; Arizona Police Crash Report, ECF No. 11-6; Ans. to Req. for Admission 13, ECF No. 11-1. Joseph Montgomery began driving the Rhino up a hill, and then attempted to back down the hill, when the vehicle rolled onto its passenger side injuring Plaintiff. Dep. 23:11-21, ECF No. 11-7; Ans. to Req. for Admission 11, ECF No. 11-1.

The Owner's Manual for the Rhino states that the vehicle is designed for off-road use only, and should not be used on paved surfaces or public roads. Owners Manual, ECF No. 11-3 at 5, 15, 21, 93. The third page of the manual states,

> [t]his vehicle is designed and manufactured for off-road use only. Use on public streets, roads, or highways is not only illegal in most areas, it also increases the risk of an accident involving other vehicles. This vehicle does not meet federal motor vehicle safety standards for on-road use.

ECF No. 11-3 at 5. The manual explains that the vehicle handles and maneuvers differently from cars, ATVs, go-carts, golf-cars, and grounds-keeping vehicles. ECF No. 11-3 at 16, 72. The vehicle "has higher ground clearance and other features to handle rugged terrain," and must be driven slowly and turned gradually if it must be driven on pavement. ECF No. 11-3 at 15, 21, 72. The vehicle is intended for use by an operator sixteen years old or older with a valid motor vehicle license. ECF No. 11-3 at 17.

Joseph Montgomery testified that the previous owner made several modifications to the Rhino, including the addition of rear view lights, rear view mirrors, seatbelts, and other lighting. Dep. 9:4-21. Joseph Montgomery understood that these modifications were made so that the Rhino could be used on the highway. *Id.* Following his purchase of the Rhino, Joseph Montgomery registered the Rhino with the Arizona Motor Vehicle Division, and obtained license plates for the vehicle. Dep. 7:11-22; Vehicle Registration, ECF No. 12-1. Joseph Montgomery insured the Rhino through a motor vehicle liability insurance policy issued by Defendant in Arizona, with liability limits of $15,000. Dep. 13:25-14:8; ECF No. 11-7. Joseph Montgomery explained that he used the Rhino primarily for driving on public roads, and that the Rhino would travel at speeds up to 45 miles per hour. Dep. 11:11-25, 22:24-23:1; ECF No. 11-7. In order to

3

drive the Rhino off-road, Joseph Montgomery was required to purchase an "off-road vehicle sticker" from Arizona, and this sticker was necessary to operate the Rhino in the area where the accident occurred. Dep. 15:20-16:6, 22:13-23:16, 24:2-12; ECF No. 11-7.

## II. MOTION TO AMEND RESPONSES TO REQUESTS FOR ADMISSION

Plaintiff has moved to amend the responses given to two requests for admissions propounded by Defendant. ECF No. 20. Courts may permit amendment of responses to requests for admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. Proc. 36(b).

Defendant's requests for admission, Plaintiff's original responses, and Plaintiff's proposed amended responses are as follows:

> 2. Please admit that at the time of the vehicle incident referred to in the Complaint herein, the plaintiff was a passenger on a 2007 Yamaha model RGG All-Terrain vehicle (ATV).
>
> RESPONSE: Admitted, except that the plaintiff believes the model was R66.
>
> AMENDED RESPONSE: The plaintiff admits that she was a passenger on a 2007 Yamaha model R66 vehicle. The plaintiff admits that the body style of the vehicle according to the Arizona vehicle registration indicated ATV. The plaintiff denies that the vehicle was an All-Terrain Vehicle (ATV) as defined in § 46.2-100 of the Code of Virginia (2011).
>
>
> 4. Please admit that the document attached as Exhibit 2 is a true, correct and complete copy of the Yamaha Owner's Manual for the model ATV in which the plaintiff was riding as a passenger at the time of the incident referred to in the Complaint.
>
> RESPONSE: Plaintiff does not own the vehicle and does not have access to the Owner's Manual and therefore is unable to truthfully admit or deny this request. This appears to be the Owner's Manual applicable to the vehicle and this can be confirmed at the deposition of the owner.

4

>   AMENDED RESPONSE: Plaintiff does not own the vehicle and does not have access to the Owner's Manual and therefore is unable to truthfully admit or deny this request. This appears to be the Owner's Manual applicable to the vehicle and this can be confirmed at the deposition of the owner. The plaintiff admits that the body style of the vehicle according to the Arizona vehicle registration indicated ATV. The plaintiff denies that the vehicle was an All-Terrain Vehicle (ATV) as defined in § 46.2-100 of the Code of Virginia (2011).

Plaintiff asserts her original responses were based on the fact that the vehicle registration issued by the Arizona Motor Vehicle Division referred to the body style of the Rhino as "ATV," as well as the fact that off-road vehicles, such as the Rhino, are often referred to generically as "ATVs." Pl.'s Mem. in Support Mot. to Amend Resps. 3; ECF No. 21. Plaintiff argues the Rhino is not an ATV under the Virginia Code definition of an ATV that was in effect on the date of the accident, February 12, 2012.[1]

The Court FINDS that allowing the amendment promotes the presentation of the case on the merits, and does not prejudice Defendant in defending the case on the merits. Accordingly, Plaintiff's motion to amend responses to requests for admission is GRANTED.

## III. STANDARD OF REVIEW FOR CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1] Section 46.2-100 of the 2011 Code of Virginia provides, "'All-terrain vehicle' means a three-wheeled or four-wheeled motor vehicle powered by gasoline or diesel engine and generally characterized by large, low pressure tires, a seat designed to be straddled by the operator, and handlebars for steering that is intended for off-road use by an individual rider on various types of unpaved terrain."

5

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party "seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the non-moving party. *Id.* at 255. Finally, either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" to support or rebut a summary judgment motion. Fed. R. Civ. P. 56(c).

Both parties in this case agree that there are no issues of genuine fact, and that the case should be decided on the cross-motions for summary judgment.

### B. Virginia Insurance Contract Interpretation

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, diversity of citizenship, so it must apply state law in interpreting the relevant insurance policy provisions. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). The Court employs the choice-of-law rules of the Commonwealth of Virginia to determine which state's laws to apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Under Virginia law, "'the law of the place where an insurance contract is written and delivered controls issues as to its coverage.'" *Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.,* 474 F. Supp. 2d 779, 788 (E.D. Va. 2007) (quoting *Buchanan v. Doe,* 431 S.E.2d 289 (Va. 1993)). It is undisputed that the Policy was issued and delivered to Plaintiff in Virginia. Therefore, this Court will apply the federal standard for summary judgment,

and will apply Virginia law to analyze the underlying insurance policy issue. *See Gen. Accident Fire and Life Assurance Corp., Ltd. v. Akzona, Inc.,* 622 F.2d 90, 93 n. 5 (4th Cir. 1980); *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 635-36 (4th Cir. 2005).

Under Virginia law, "[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Seals v. Erie Ins. Exch.,* 674 S.E.2d 860, 862 (Va. 2009) (quoting *Floyd v. N. Neck Ins. Co.,* 427 S.E.2d 193, 196 (Va. 1993)). Therefore, "a court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." *Blue Cross & Blue Shield v. Keller,* 450 S.E.2d 136, 140 (Va. 1994). Virginia courts "interpret the unambiguous terms of a contract according to their plain meaning." *Uniwest Constr., Inc. v. Amtech Elevator Servs.,* 699 S.E.2d 223, 231 (Va. 2010). However, "[b]ecause insurance companies typically draft their policies without the input of the insured, the companies bear the burden of making their contracts clear." *Resource Bankshares Corp.,* 407 F.3d at 636. "Accordingly, if an ambiguity exists, it must be construed against the insurer." *Id.* (citing *Caldwell v. Transp. Ins. Co.*, 364 S.E.2d 1, 3 (Va. 1988)). "[L]anguage is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *Granite State Inx. Co. v. Bottoms*, 415 S.E.2d 131, 134 (Va. 1992). Moreover, "[l]anguage in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *Seals*, 674 S.E.2d at 862 (quoting *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co., Inc.*, 316 S.E.2d 734, 736 (Va. 1984)). With these principles of law in mind, the Court will address the motions for summary judgment.

## IV. ANALYSIS

The issue in this case is whether the Rhino meets the Policy's definition of uninsured motor vehicle or underinsured motor vehicle. The Policy defines "uninsured motor vehicle" and "underinsured motor vehicle" as "a land motor vehicle or trailer of any type" without sufficient insurance coverage, but provides, "neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes: [] [a] farm type tractor or other equipment designed for use principally off public roads." Policy 12-13, ECF No. 11-2. This Court FINDS that the Rhino was an uninsured or underinsured motor vehicle under the Policy and was not a "farm type tractor or other equipment designed for use principally off public roads."

### A. The Rhino Falls Within the Definition of an Uninsured or Underinsured "land motor vehicle or trailer of any type"

To determine whether coverage exists, the Court must first determine whether the Rhino falls within the Policy's broad definition for an uninsured or underinsured motor vehicle. The Policy defines uninsured motor vehicle as:

> a land motor vehicle or trailer of any type . . . [t]o which no liability bond, policy, deposit or money or security applies at the time of the accident in at least the minimum limits required by Va. Code Ann. Section 46.2-472.

ECF No. 11-2 at 20. The undisputed evidence is that the Rhino was insured under a policy of motor vehicle liability insurance carrying liability limits of $15,000 per person. Def.'s Mem 2, ECF No. 11; Compl. ¶ 11, ECF No. 1. As section 46.2-472 of the Code of Virginia provides for minimum limits of $25,000 for bodily injury, the Rhino's insurance does not meet the minimum requirements of the Virginia statute. Based on the limited record before the Court, it appears that

the Rhino qualifies as uninsured under the Policy's definition.

The Rhino is also apparently underinsured under the Policy definition, because "the sum of [] the limits of liability under all liability bonds or policies" for the Rhino is less than the uninsured motorists coverage under the Policy. ECF No. 11-2 at 19. The Policy has uninsured/underinsured coverage limits of $100,000. Policy, ECF No. 11-2 at 3. With respect to the coverage limits, the parties have not contested that the Rhino was uninsured or underinsured under the Policy. Based on the information in the record, it appears the Rhino was both.

The next issue, which *is* contested by the parties, is whether the Rhino is a motor vehicle, defined in the Policy as "a land motor vehicle or trailer of any type." Applying the Policy's definition of motor vehicle, "a land motor vehicle or trailer of any type," does not require reference to the definitions contained in the Virginia Code. Both parties addressed the issue of whether the Rhino is an all-terrain vehicle or "ATV" as defined by Section 46.2-100 of the 2011 Code of Virginia. Def.'s Mem. 14, ECF No. 11; Pl.'s Mem. in Support Sum. Judg. 2-3, ECF No. 12. The Supreme Court of Virginia, however, refused to rely on statutory definitions when determining whether a moped was an uninsured motor vehicle where the definition of motor vehicle was very similar to that used in the instant Policy[2] because, "[t]he policy contains no indication to the insured that cross-reference must be made to provisions scattered through the Code of Virginia in order to determine the meaning of the seemingly unambiguous term 'motor vehicle.'" *Hill v.*

---

[2] The insurance policy in *Hill* contained the following definition, "Motor vehicle - means a land motor vehicle or trailer other than: (a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, (b) a vehicle operated on rails or crawler-treads or, (c) a vehicle while located for use as a residence or premises." *Hill v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 727, 728 (Va. 1989).

*State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 727, 729 (Va. 1989).[3] The Court construed the policy's definition for uninsured motor vehicle to include a moped even though a moped was not included in the statutory definition of an uninsured motor vehicle. *Id.* at 730. Accordingly, the Court finds the discussion of whether the Rhino qualifies as an ATV under § 46.2-100 of the 2011 Code of Virginia irrelevant to determining whether the Rhino is covered by the Policy.

As opposed to relying on the statutory definition, the Court in *Hill* referenced a dictionary definition of motor vehicle as "a self-propelled wheeled conveyance that does not run on rails." *Hill*, 375 S.E.2d 727, 729 (citing The American Heritage Dictionary 817 (2d ed. 1982)). In *Hill*, a moped, that was not required to be, and was not, registered, licensed, or insured, collided with a truck on a public highway. *Id.* at 728. The Court found that there was no clear indication that mopeds were intended to be excluded from coverage. *Id.* at 729-30. The Court noted that implicit in the arguments of both parties regarding the meaning of the term "motor vehicle" was the fact that the policy language may be subject to two or more interpretations. *Id.* at 730. Finding that any ambiguity must be construed against the insurer, the Court concluded the policy's

---

[3] *Hill* explains that the statute must be consulted in those cases where the insurance policy at issue is not providing the minimum coverage required by law. 375 S.E.2d at 729 (citing *USAA Ins. Co. v. Yaconiello*, 309 S.E.2d 324, 325 (Va. 1983)). There has been no argument made in this case, however, that the Policy does not provide at least the minimum coverage required by the uninsured motorist statute. *See* Va. Code §38.2-2206.

Similarly, both parties have cited and discussed a case out of West Virginia holding that a policy did not provide uninsured motorist coverage for an injury sustained while the plaintiff was a passenger on an ATV being driven off road. *See Boniey v. Kuchinski*, 677 S.E.2d 922, 929 (W. Va. 2009). When defining uninsured motor vehicle, the *Boniey* policy provided that "[a]n uninsured motor vehicle does not include a motor vehicle . . . Designed for use mainly off public roads, except while on public roads." *Id.* at 925. There was no question in *Boniey* that the ATV was excluded from the policy's definition of uninsured motor vehicle; the sole issue was whether the policy's provision excluding certain vehicles from coverage violated West Virginia's uninsured motorist statute. *Id.* As the *Boniey* case was decided based on the policy's compliance with a West Virginia statute, the Court does not find it instructive in resolving the instant case.

10

definition of motor vehicle included the moped.  *Id.* at 730; *See also CUNA Mutual Ins. Soc. v. Norman*, 375 S.E.2d 724, 725 (Va. 1989) (holding that disputes over ambiguous policy language are resolved against the insurer because the insurer selected the language of the policy); *White Tire Dist. v. Pennsylvania Nat. Mutual*, 367 S.E.2d 518, 519 (Va. 1988) ("Where there is doubt or uncertainty and where the language of a policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer.").

The Rhino is a four-wheeled, self-propelled, vehicle that was registered with the Arizona Department of Motor Vehicles, with a license plate that allowed the Rhino to be legally operated on public highways.   The Rhino is most certainly a "self-propelled wheeled conveyance that does not run on rails."  *Hill*, 375 S.E.2d at 729.  The Court finds that, under a plain reading of the Policy, and giving the terms their normal and customary meaning, the Rhino is "a land motor vehicle or trailer of any type."   Further, to the extent the term "motor vehicle" is ambiguous, the language must be construed against the insurer to include the Rhino.  *See Hill*, 375 S.E.2d at 730. The question becomes whether the Rhino is "[a] farm type tractor or other equipment designed for use principally off public roads," and, thus, excluded from coverage.  Policy 12-13, ECF No. 11-2.

> **B.** **The Rhino is not clearly a "farm type tractor or other equipment designed for use principally off public roads"**

The Policy's broad inclusive definition of uninsured and underinsured motor vehicle as "a land motor vehicle or trailer of any type" is qualified by language excluding:

> 1. A farm type tractor or other equipment designed for use principally off public roads while not on public roads; or
>
> 2. Any vehicle:
>    a. Operated on rails or crawler treads; or

      b. While located for use as a residence or premises.

ECF No. 11-2 at 19-20. Accordingly the Court must next determine whether this language applies to the Rhino such that the Rhino is not included in the Policy's definition of an uninsured or underinsured motor vehicle.

  The Supreme Court of Virginia has allowed insurers to include reasonable exclusions in their uninsured motor vehicle coverage to exclude certain risks. *See State Farm Mut. Auto. Ins. Co. v. Gandy*, 383 S.E.2d 717, 717 (Va. 1989). The caveat is that "it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *Id.* at 718. The Court has found the exclusion contained in the Policy for "farm type tractor or other equipment designed for use principally off public roads, while not upon public roads" to be clear and unambiguous. *Id.* at 719; *See also Moore*, 448 S.E.2d at 613. Applying this unambiguous exclusion, the Supreme Court of Virginia has found a forklift operated on private property was not a covered uninsured or underinsured motor vehicle, while a moped operated on a public highway and a family-class stock car operating on a racetrack were covered.

  The Virginia Supreme Court found no coverage existed for injuries sustained when a forklift ran over Harold Gandy's foot while he was standing on private property. *State Farm Mut. Auto. Ins. Co. v. Gandy*, 383 S.E.2d 717, 718-19 (Va. 1989). Assuming without deciding that the forklift was a motor vehicle, the Court found the forklift was "equipment designed for use principally off public roads." *Id.* In reaching this conclusion, the Court referenced the dictionary definition of forklift in addition to noting that the forklift had one seat for the operator only, was not registered with the Division of Motor Vehicles, was not licensed with a vehicle tag, was used only in the private yard of the company that owned it, could reach a speed of

approximately twenty miles per hour, and was not on a public highway at the time of the accident. *Id.*; *See also Reese v. Wheeler, et. al.*, 2004 WL 1320900, *4 (Del. Super. 2004) (the Superior Court of Delaware, applying Virginia law, found a Yard Dog roll-off jockey truck used to move trailers around a loading dock was "equipment designed principally for use off public roads, while not upon public roads" because it was equipment in the ordinary meaning of the word, not designed for use on public roads, not used on public roads, not registered with the Department of Motor Vehicles, not licensed, and not on a public road at the time of the accident).

In the *Hill* case, the Court found the policy language did not clearly exclude mopeds from coverage, as the only clear exclusions were for "farm tractors, vehicles operated on rails or crawler treads, and vehicles located for use as a residence." *Hill*, 375 S.E.2d at 729-30. Presumably, the Court did not address the exclusion for "other equipment designed for use principally off public roads while not on public roads," because the accident in *Hill* occurred on a public road. *Id.* Finding that any ambiguity must be construed against the insurer, the Court concluded the policy's definition of motor vehicle included the moped. *Id.* at 730.

Similarly, the Court found a family-class stock car involved in an accident off public roads was not "a farm type tractor or other equipment designed for use principally off public roads." *See Moore v. State Farm Mut. Auto. Ins. Co.*, 448 S.E.2d 611, 613 (Va. 1994). In *Moore*, the plaintiff was struck by the stock car during warm-ups at a speedway. *Id.* at 612. The stock car, which was used exclusively for racing on race tracks, was a Chevrolet Nova that had been stripped of head lights, tail lights, turn signals, muffler, side mirrors, and emergency brake. *Id.* Recognizing that "to bar coverage, exclusionary language must clearly bring the particular event, thing, or circumstance in question within its scope," the Supreme Court of Virginia held that even

13

with the modifications, the stock car was not "so altered as to place it clearly within the class of equipment designed for use principally off public roads." *Id.* at 613 (citing *Floyd v. Northern Neck Ins. Co.*, 427 S.E.2d 193, 196 (Va. 1993)).

Although the Rhino accident occurred off public roads, the Virginia Supreme Court made clear in *Moore* that the location of the accident is not dispositive. Instead, the nature of the motor vehicle at the time of the accident determines whether it falls within the definition of uninsured or underinsured motor vehicle—whether the Rhino is a "farm type tractor or other equipment designed for use principally off public roads." The Rhino is a four-wheeled vehicle, that is self-propelled, operates in forward and reverse, and reaches speeds of up to 45 miles per hour. It has two seat-belted bucket seats in the front, a bench seat in the back, rear-view mirrors, head lights, tail lights, and break lights. It was registered with the Arizona Division of Motor Vehicles, with a license plate that allowed the Rhino to be legally operated on public highways, as well as a sticker that allowed off-road use. The Rhino was insured under a policy of motor vehicle liability insurance issued by Defendant in Arizona. According to Mr. Montgomery, the Rhino was principally used on public highways. Despite an owner's manual that indicates the Rhino was designed for off-road use, the reality is that the vehicle was equipped and licensed to legally operate both on public highways and off-road, and was operated both on and off public highways. The Rhino is much more similar to the moped and family-class stock car, than it is to a forklift or a roll-off jockey truck.

The Court must apply Virginia law requiring that the "language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer," and that "to bar coverage, exclusionary language must clearly bring the particular event, thing, or

circumstance in question within its scope." *See Seals*, 674 S.E.2d at 862; *Moore*, 448 S.E.2d at 613. Construing the exclusionary language in the Policy against Defendant, and applying the normal and customary use of the phrase "farm type tractor or other equipment designed for use principally off public roads," the Court cannot find that the Rhino clearly falls within the exclusion. Therefore, the Rhino is an uninsured and underinsured motor vehicle as defined in the Policy.

## IV. CONCLUSION

The Court GRANTS Plaintiff's motion to amend responses to requests for admissions, GRANTS Plaintiff's Motion for Summary Judgment, DENIES Defendant's Motion for Summary Judgment, and FINDS that the 2007 Yamaha Rhino is an "uninsured or underinsured motor vehicle" as defined in the Policy. The Clerk is DIRECTED to send copies of this Opinion and Order to all counsel of record.

/s/
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
March 6, 2015

15